FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

00 JUN 22 ...

U.S. DISTRICT COURT
N.D. OF ALABAMA

D. SCOTT RENSHAW,

    Plaintiff,

vs.

BREIBART & LICHTENSTEIN, P.C.,
a professional corporation,

    Defendant.

CV-98-RRA-0677-S

**ENTERED**

JUN 2 2 2000

**Memorandum of Opinion**

    This cause comes to be heard on plaintiff D. Scott Renshaw's ("Renshaw") objections to the Report and Recommendation ("R&R") filed by Magistrate Judge Robert R. Armstrong on March 13, 2000, regarding defendant's motion for summary judgment (Doc. No. 32). This case stems from the plaintiff's complaint alleging sex discrimination under Title VII of the Civil Rights Act of 1964 essentially for quid pro quo and hostile work environment sexual harassment. Plaintiff also asserted claims of constructive discharge and retaliation, assault and battery, invasion of privacy, outrage, negligent retention, negligent supervision, wrongful termination and retaliation, defamation and retaliation against former employee. The court will not repeat all citations and quotes in the R&R, but hereby refers to them.

**I.  Background.**

    Renshaw was hired by Richard Breibart ("Breibart"), an attorney, in March of 1995, to assist in the collection of debts owed his clients. His supervisor was Ms. Kaye Nail ("Nail"). In 1996, Breibart and attorney David Lichtenstein formed Breibart and Lichtenstein, P.C. Both Renshaw and Nail continued in their same positions. During this period, Renshaw and Nail entered into a consensual intimate relationship. However, Renshaw contends that in late 1996, the relationship was altogether terminated. The plaintiff asserts that subsequent to the break-up, Nail began making overt attempts to rekindle their



relationship. For example, according to Renshaw, Nail begged him to have sex with her, wrote him love letters, and continually bothered him about resuming their former relationship. On March 14, 1997, Renshaw was terminated by Breibart, effective immediately.

## II.   Standard of Review.

"When a party makes a timely objection to a R&R by a Magistrate Judge, the determination is subject to de novo review by the district court. However, portions of the R&R that are not objected to will be evaluated by the district court judge under a clearly erroneous standard of review." *Cuevas v. Callahan*, 11 F.Supp. 2d 1340, 1342 (M.D. Fla. 1998)(internal citations omitted); *see In re Holywell Corp.*, 967 F.2d 568, 571 (11th Cir. 1992); FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B).

## III.   Discussion.

### A.   Hostile Environment.

The plaintiff's central objection is that the Magistrate Judge failed to properly apply the "severe or pervasive" standard for hostile environment cases. *See Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999). In *Mendoza*, the court propounded the following standard:

> To establish a hostile-environment sexual-harassment claim under Title VII based on harassment by a supervisor, an employee must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.
> . . .
>
> Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. *Id.* The

2

> environment must be one that "a reasonable person would find hostile or abusive" and that 'the victim ... subjectively perceive[s] ... to be abusive.' Furthermore, 'the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'
>
> The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

*Id.* at 1245-1246 (citations omitted).

Here, Renshaw contends that a genuine issue of material fact exists as to whether the allegedly harassing conduct was severe or pervasive. In particular, he points out that upon the termination of his intimate relationship with Nail, she repeatedly interfered and interrupted him during work hours, on one occasion explicitly requested sex, and also sent him suggestive notes. Renshaw maintains that the Magistrate Judge improperly dismissed the foregoing as mere attempts to resume a failed relationship.

As an initial matter, the court has some reservations conceding that a question of fact exists as to whether Nail's conduct was based on the sex of Renshaw. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discriminat(ion) . . . because of . . . sex. We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). As articulated by the Eleventh Circuit, "[p]ersonal animosity is not the equivalent of sex discrimination and is not

3

proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation." *McColllum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986).

The facts of this case are similar to those considered by Judge Seitz in *Succar v. Dade County School Board*, 60 F. Supp. 2d 1309 (11th Cir. 1999). In *Succar*, the plaintiff, like Renshaw, asserted a hostile environment claim arising from conduct he was allegedly subjected to by his ex-lover, Ms. Lorenz, after their intimate relationship had ended. Both Succar and Lorenz were teachers within the Dade County, Florida, school system. As described by the court, the case involved "the classic setting of a love affair gone awry, with Lorenz playing the part of the proverbial jilted lover attempting to seek retribution." *Id.* at 1314. Concluding that the alleged harassment was not based on the sex of the employee, and summary judgment in favor of the defendant was appropriate, the court stated:

> Ms. Lorenz's harassment arises not out of the fact that Plaintiff is male, but rather, out of the termination of the intimate physical and emotional relationship she shared with him. Clearly, the end of this ill-fated relationship brought with it hurt feelings and bruised egos--perfect ingredients for the bearing of a grudge. Viewing the undisputed material facts in the light most favorable to Plaintiff, it is clear to the Court that the consequence of the failed relationship (i.e., Ms. Lorenz's harassment of Plaintiff) was not the result of Plaintiff's gender but of responses to an individual because of her former intimate place in [that individual's] life. In other words, Plaintiff's gender was not the impetus for Ms. Lorenz's conduct; rather, it was merely coincidental to that conduct.

*Id.* at 1314-15 (citations omitted).

Similar to *Succar*, the conduct of Nail did not arise out of the fact that Renshaw is male, but rather, out of the termination of the intimate physical and emotional relationship she shared with him. Consequently, after viewing the evidence in a light most favorable to Renshaw, the court is satisfied that the post-relationship actions of Nail were not motivated as a result of the plaintiff's gender, but rather, because he was a former lover who jilted her. Any harassment on the part of Nail was against Renshaw as an individual,

and the fact he is male was merely coincidental to that conduct. Accordingly, as the harassment was not based on the sex of Renshaw, a principal element of a hostile environment claim cannot be established and summary judgment in favor of the defendant is appropriate.

The court recognizes that the Eleventh Circuit has yet to address a factual scenario similar to the one before the court. However, even if the Court of Appeals disagrees with the "because of sex" analysis proffered above, the defendant is nevertheless entitled to summary judgment. After careful consideration, that court is convinced that there is no genuine issue of material fact which indicates that the alleged harassment suffered by Renshaw was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment.

In *Gupta v. Florida Board of Regents*, 2000 WL 633024 (11th Cir., May 17, 2000), the Eleventh Circuit recently addressed the "severe or pervasive" standard. In *Gupta,* Dr. Srbana Gupta, a female assistant professor at Florida Atlantic University, asserted sexual harassment and retaliation claims against the Florida Board of Regents. The claims arose from the alleged conduct of Dr. Rupert Rhodd, an associate professor of economics who eventually became Dean of the College of Liberal Arts, and who also headed the search committee for the position that Gupta eventually filled. The statements and conduct of Rhodd which were arguably sexual in nature included the following: (1) on one occasion Rhodd commented to Gupta that she was "looking very beautiful"; (2) Rhodd's frequent phone calls to Gupta at her home; (3) an incident where upon entering Rhodd's office, Gupta observed him wearing only an undershirt, wherein he then unbuckled his belt, pulled down his zipper, and tucked his shirt in; (4) that Rhodd stared at her, touched her ring and bracelet once, and repeatedly asked her to lunch; and (5) one instance where Rhodd placed his hand on Gupta's knee, and another where he touched the hem of her dress.

5

The court examined each instance, and upon considering all the behavior and conduct of a sexually or gender related nature collectively, found that for summary judgment purposes, Gupta did not satisfy the severe or pervasive requirement. As for the "looking very beautiful" comment, the court dismissed it as either a simple compliment, or merely flirtatious conduct which did not constitute sexual harassment. *Id.* at *8; *See Oncale*, 523 U.S. at 81 (explaining that intersexual flirtation is part of ordinary socializing in the workplace and should not be mistaken for discriminatory conditions of employment). The court also determined that any claim relating to the incident regarding Rhodd tucking in his shirt was undermined by the finding that he had not made any corresponding gestures or comments. *Id.* at *9. The court further described this event as an "isolated occasion" in which the alleged conduct was not "physically threatening or humiliating." *Id.* Moreover, it was undisputed that on the day in question, the air conditioning was broken and that is was very hot in the building. In like manner, Gupta's allegations of Rhodd's staring, touching her hand and bracelet, and asking her to lunch were also found not to involve severe, threatening, or humiliating conduct. *Id.*

The two most serious incidents, the phone calls and Rhodd's touching Gupta's knee and dress, garner more attention than the foregoing incidents. For summary judgment purposes, the court concluded that Rhodd frequently made phone calls to Gupta at her home. *Id.* at *8. The conversations included Rhodd asking Gupta how she was doing, was she talking to her boyfriend, had she eaten dinner, if she had personal problems, and if she was in bed. *Id.* at *16 nn.12-13. Furthermore, Rhodd offered his opinion that men were superior to women, that women were like meat, and that men needed variety in women. *Id.* at *3. He also commented as to the promiscuity of people from Jamaica as compared to the innocence of people from India. *Id.* at *8.

The court concluded that while such conversations were frequent and annoying, they did not constitute severe or pervasive sexual harassment. *Id.* As pointed out by the

6

court, during these calls Rhodd neither asked Gupta for a date, nor did he make sexually explicit remarks or innuendos. *Id.* Moreover, such behavior was not found to be intimidating or threatening. As for specific comments, it was determined that while far from "laudatory," they were "isolated utterances" expressed over a period of several months. *Id.*

Of all Gupta's complaints, the court considered Rhodd's placing his hand on her knee once and touching the hem of her dress once to be the most serious. *Id.* at 9. While such behavior was deemed improper, it was not to such a degree as to create a question of fact as to the severity or pervasive nature of Rhodd's conduct. In particular, the court placed considerable emphasis on the fact that they were "only two incidents in a period of six or seven months during which they were interacting (out of an even longer period during which the two worked for the University)." *Id.* Each incident was consequently deemed momentary, and neither was determined to be coupled with any verbal suggestions or advances. *Id.* at *9; See Minor v. Ivy Tech State College*, 174 F.3d 855, 857 (7th Cir. 1999)(no hostile environment where the supervisor, among other things, on one occasion "put his arms around [the plaintiff], kissed her, squeezed her, and said, 'Now is this sexual harassment?'").

In conclusion, the court found that Gupta failed to present evidence that Rhodd's conduct was in anyway physically threatening or humiliating, or that a reasonable person would view such conduct as "severe." *Id.* at *10. Citing a recent Fifth Circuit case, the court opined, "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Id. citing Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999). If Gupta's complaints were found to constitute sexual harassment, the court concluded that it would effectively be "lower(ing) the bar of Title VII to punish mere bothersome and

7

uncomfortable conduct, and would trivialize true instances of sexual harassment." *Id.* at *10.

Although the particular instances at issue in the present matter are not identical to the treatment suffered by the plaintiff in *Gupta*, the principles set out in the court's opinion are instructive. The most serious incident occurred on February 17, 1997, when Nail explicitly asked Renshaw to have sex with her. While a question of fact might exist as to whether Renshaw subjectively perceived such comment as being sufficiently severe or pervasive to alter the terms or conditions of employment, there is not a factual question as to whether this subjective perception is objectively reasonable. Foremost, during the relevant post-relationship period, this is the only incident proffered by the plaintiff in which Nail made an explicit request for sex. Thus, like much of the conduct suffered by Gupta, the incident at issue here was only momentary. Furthermore, when examining all the surrounding circumstances, including the prior sexual relationship between Renshaw and Nail, such conduct cannot be considered physically threatening or humiliating.[1] Lastly, there is no evidence which indicates that Renshaw's job performance was unreasonably affected as a result of Nail's request. Renshaw has not contended that he suffered from undue illness or stress, or that he could not complete his assigned occupational tasks as a result of Nail's request.

Renshaw also asserts that after the termination of the relationship, Nail regularly cried and "carried-on" to him in the office. When Renshaw was asked what exactly he meant by "crying and carrying-on," he replied that Nail had some "personal" problems with him. There is nothing in the record which indicates that Nail's actions at issue were

---

[1] Renshaw frequently contends that undue emphasis was placed on his consensual relationship with Nail. However, the court must take into account Nail and Renshaw's previous relationship. As proclaimed in both *Mendoza* and *Gupta*, when judging the objective severity of harassment, a court must take into account all the circumstances. Consequently, the fact that Nail and Renshaw had recently broken off an intimate relationship, the nature of which included instances where they had broken up, only to rekindle the flame at a later date, weighs against a finding of a genuine issue of material fact as to whether the plaintiff was subjected to severe or pervasive harassment as a result of Nail's request for sex.

8

either sexual in nature, or even if they were, that they constituted severe or pervasive harassment. Moreover, similar to the phone calls in *Gupta*, there is nothing which suggests that this "carrying on" was accompanied by sexually explicit remarks or innuendos. Accordingly, for summary judgment purposes, while such conduct allegedly occurred on a frequent basis and could possibly disrupt Renshaw's work environment, it was neither severe, nor physically threatening or humiliating.

Moreover, Renshaw cannot establish his hostile environment claim with allegations that Nail sent him endearing notes and letters. One note stated that Nail could not stand the thought of Renshaw not having any money. Another one was a card that read, "[e]very day, the minute I wake up I miss you. Every song on the radio seems to be about love and I miss you. Every time my phone rings and I hear someone else's voice, I miss you. Every couple I see holding hands or kissing makes me miss you more." (Plaintiffs Exhibit 13). Inside the card was a personal note from Nail which read:

> Dear Scott,
>
> I know there are no words or actions that can change what has become of us. I wish so much that there were. You should know that while time does soften the pain and loneliness it only grows deeper in my heart.
>
> Maybe you can walk away from me with your pride, your space, privacy and freedom to be the man you choose to be, but leave knowing that a chance for true love comes once in a lifetime.
>
> As you drift out of my life, go knowing that I think deep in your soul you are truly a wonderful, loving, caring person that has made me a better person for having known you.
>
> I love you
> Kaye

Another note read:

> Just a note to say that I hope you have a nice weekend ahead. You are a very very special person to me and I too want you to be happy. I hate to say that I am not looking forward to this weekend. I know I just need to try to stay busy, my heart's just not in it.

9

> I hope you will be thinking about what I said yesterday. I'm gonna try to think about all you said too and maybe make peace with everything.
>
> I sure don't want you to feel like I hold you responsible for my happiness or unhappiness. I know I have to create that myself.
>
> I do love you and miss you.
>
> K.

Although the foregoing letters might create a genuine issue of fact as to whether Renshaw subjectively perceived the harassment as sufficiently severe or pervasive, they do not create an environment in which, considering all the circumstances, a reasonable person in the plaintiff's position would consider hostile or abusive. Foremost, the letters do not reflect conduct which could be deemed frequent or severe. Instead, they merely constitute two love letters delivered in the span of a three month period. Additionally, there is nothing in the letters which could be considered physically threatening or humiliating, nor are they permeated with sexually explicit remarks or innuendos. Rather, they appear to espouse the pleas of a heart-broken person. Lastly, the plaintiff has failed to proffer any evidence which indicates that the letters unreasonably interfered with his job performance.

The court recognizes it must examine and consider all of the behavior and conduct of a sexual nature collectively in determining whether it meets the "sufficiently severe or pervasive" requirement. *See Gupta*, 2000 WL 633024, *10. The court has done so, and concludes that it does not. The conduct in this case exemplifies the ordinary tribulations of a couple in the process of terminating an intensely intimate relationship. It just so happens that the couple shares the same employer and involves a supervisor/employee relationship. Like the plaintiff in *Gupta*, Renshaw failed to present evidence of conduct that a reasonable person would view as severe, or that could be considered physically threatening or humiliating. This case simply does not involve patterns or allegations of

10

extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated Renshaw's work environment. *See id.*

Accordingly, based upon the pronouncements adopted in *Mendoza* and *Gupta*, the court is satisfied that there is insufficient evidence to create a genuine issue of material fact as to the existence of a hostile environment. Summary judgment in favor of the defendant is therefore warranted.

### B.    Quid Pro Quo Harassment.

Although the plaintiff's objections are far from a model of clarity, it does not appear that he specifically objects to the Magistrate Judge's finding that the defendant is entitled to summary judgment as to the quid pro quo harassment claim. Accordingly, the court will review the Magistrate Judge's disposition of this issue pursuant to the clearly erroneous standard of review. *Cuevas v. Callahan*, 11 F. Supp. 2d at 1342 (portions of the R&R that are not objected to will be evaluated by the district court judge under a clearly erroneous standard of review); FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the record, the court is satisfied that the Magistrate Judge's decision concerning the quid pro quo harassment claim was not clearly erroneous. Accordingly, summary judgment in favor of the defendant is appropriate.

### C.    Retaliation.

It is also not entirely clear as to the extent in which Renshaw objects to the Magistrate Judge's findings concerning the retaliation claim. However, whether reviewing the findings pursuant to the de novo or clearly erroneous standard, granting summary judgment in favor of the defendants is appropriate. In particular, the plaintiff failed to satisfy his burden in establishing a question of fact as to whether the defendant's legitimate nondiscriminatory reason, that Renshaw expressed negative and disruptive comments to other employees, was a pretext for retaliation.

### D.  State Law Claims.

After reviewing the plaintiff's various and creative state law claims pursuant to the proper standards, the court finds no error in the Magistrate Judge's conclusions of law.

### IV.  Conclusion.

Based on the foregoing, defendant's motion for summary judgment will be granted.

Done, this _22nd_ of June, 2000.

                                                                   _____
                                                                   EDWIN L. NELSON
                                                                   UNITED STATES DISTRICT JUDGE

12